ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF RICHLAND** | ) | **FIFTH JUDICIAL CIRCUIT** |
| | ) | |
| D.G., a minor, by and through parents | ) | CASE NO. 2025-CP-40-_____ |
| Stephen and Tammie Gilchrist, | ) | |
| | ) | |
| Plaintiffs, | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| vs. | ) | |
| | ) | |
| Richland County School District Two, | ) | |
| | ) | |
| Defendant. | ) | |

**COMES NOW** Plaintiffs Stephen and Tammie Gilchrist as parents and natural guardians for their minor child D.G., by and through the undersigned counsel, and hereby bring the following Complaint against Richland School District Two, and alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiffs Stephen and Tammie Gilchrist are citizens and residents of Richland County, South Carolina.  They are the parents and natural guardians of D.G., a minor.

2.      Plaintiffs are using D.G. as a pseudonym for their child due to the child's age at all times relevant to this action as well as the sensitive nature of the subject matter of this action.

3.      D.G. is a citizen and resident of Richland County, South Carolina.  At all times relevant to this action, D.G. was enrolled at the Blythewood Middle School (hereinafter "BMS").

4.      Defendant Richland County School District Two (hereinafter "District") is a political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the <u>Code of Laws of South Carolina</u> (1985), as amended).

5.      At all times relevant to this action, Defendant owned and operated BMS as a public middle school.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

6.     District operated BMS by and through agents, servants, personnel, volunteers, and/or employees who were responsible for operating BMS pursuant to state and federal law as well as the District's own policies and procedures.

**JURISDICTION & VENUE**

7.     This Court has jurisdiction over the subject matter of this litigation and the parties thereto pursuant to the South Carolina Constitution, Article V, Section 11.

8.     Venue is proper in this Court pursuant to South Carolina Code Section 15-7-30 as all parties reside and/or do business in Richland County and the facts and circumstances giving rise to Plaintiffs claims arose in the County.

**FACTUAL ALLEGATIONS**

9.     D.G. was eleven (11) or twelve (12) years of age during the period of time at issue in this action.

10.     D.G. entered the 6th grade at Blythewood Middle School (hereinafter "BMS") in August of 2022.

11.     Prior to attending BMS, D.G. received good grades and enjoyed attending school.

12.     D.G.'s parents have long been involved with South Carolina's public schools.

13.     D.G.'s mother Tammie Gilchrist spent her career as a teacher and reading coach in the District.  Since retirement, she has served as the Director of Northeast Enrichment Academy, a free First Steps 4K program in northeast Columbia, South Carolina that works with children to teach them the skills they need to succeed in the District's kindergartens.  Although an independent organization, the Academy works with the District and the District provides meals and playground access for the Academy's students.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

14.     D.G.'s father Stephen Gilchrist has spent his career working in local, state and federal government to advocate for policy initiatives including education reform, alternative energy sources and economic security for low-income communities.  He is past Chairman of the Richland County (SC) Planning Commission, current Chairman and CEO of the South Carolina African American Chamber of Commerce, Trustee for the South Carolina Public Charter School District, and Vice Chairman of the U.S. Commission on Civil Rights.

15.     Hereinafter, Tammie and Stephen Gilchrist will be referred to collectively and singularly as "Parents."

16.     Parents were founding members of the Richland Two Black Parents Association which was formed in large part to address bullying and harassment in the District.  The Association has since developed into an organization for parents of all the District's students.

17.     Based on their professional endeavors, Parents are often at odds with the District and its employees over matters of politics and school policy concerning matters outside the scope of D.G.'s education.  For example, Stephen Gilchrist advocated for school choice and a parents' right to homeschool their children during the administration of former South Carolina Governor Mark Sanford Jr., he works in support of state sanctioned charter schools during the administration of current Governor Henry McMaster and supports the education reforms of President Donald Trump both now and during President Trump's first administration.

18.     Shortly after school started in August of 2022, Parents introduced themselves to BMS principal Karis Mazyck and D.G.'s teachers.  Parents shared, amongst other things, the family's love of music and D.G.'s desire to study saxophone while attending BMS.

19.     On or about 7 September 2022, D.G.'s music teacher, Morgan Bostick, informed Parents that D.G. failed to make the required "minimum score of 97% on a music theory test" that

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

was required study saxophone at BMS. However, Teacher Bostick offered to waive the testing requirement if Parents enrolled D.G. in private music lessons and suggested Parents hire a specific instructor to provide those lessons.

20.     Parents objected to the requirement that any middle school student had to pay for private lessons to qualify to study an instrument at BMS. They specifically expressed their concern about the unfairness of such a policy to families who were unable to afford private lessons.

21.     Parents expressed their concerns about the private music lesson requirement to both Principal Mazyck and Teacher Bostick.

22.     Following the disagreement about a requirement for private music lessons, Teacher Bostick harassed and retaliated against D.G. in numerous ways including, but not limited to:

a. failing to adjust D.G.'s schedule so that D.G. could attend the same music class as other saxophone players. Parents had to raise the issue with BMS in order to get D.G.'s schedule adjusted;
b. assigning D.G. punishments for alleged minor infractions when similar conduct was tolerated when committed by other students;
c. alleging that D.G. was involved in breaking another student's musical instrument;
d. confining D.G. alone in a store room during class so D.G. could "calm" down; and
e. parading D.G. in front of the class and allow other students to laugh at D.G. for an alleged infraction.

23.     Shortly after starting middle school at BMS, D.G. began to be bullied during math classes that were either supervised by District employees or could have been. The following incident occurred on September 14, 2022 and is typical of the bullying D.G. endured at BMS:

a. Classmate "A" bullied D.G. and other students during math class.
b. "A" was known as a bully to BMS teachers and administrators.
c. District employees and agents took no action to enforce District policy and procedures or maintain discipline in its classrooms so "A" continued to bully, harass and intimidate certain classmates including D.G.
d. D.G. complained to Parents on September 14, 2022 about being bullied by "A" earlier that day during their math class.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

e. Dismayed by the repeated bullying D.G. and other students were enduring early in the school year without an effective response from the District, Parents reported the September 14th incident to BMS' administration later that same day.

f. Principal Mazyck eventually informed Parents that the situation with "A" had been "handled appropriately" and that D.G. should report similar future incidents "more quickly."

g. Shortly after the Principal allegedly handled the situation, "A" asked D.G. for a marker. Upon receiving the marker, "A" promptly snapped it in half in a manner that was threatening to D.G. and other students.

h. D.G. interpreted the act as a threat of violence against anyone reporting "A's" misconduct in the future.

i. Although a teacher was present in the classroom when "A" snapped the marker, she admitted she was not aware of the incident.

j. Following the September 14th incident, a sizable number of classmates labeled D.G. a "snitch" and harassed, bullied and/or intimidated D.G. for being a snitch.

k. The only action taken by BMS regarding "A's" repeated bullying of D.G. and other students was to ensure that "A" and D.G.'s respective classroom desks were not on the same "site line."

l. Upon information and belief, District took no disciplinary action against "A" related to the September 14th or any other incident of bullying, harassment, intimidation, and/or retaliation in violation of District's policies and procedures.

24.     District was aware that some BMS students would bully, harass, intimidate, and/or retaliate against fellow students who they perceive to be informers or "snitches."

25.     Although BMS teachers and administrators are aware that perceived "snitches" were bullied, harassed, and/or intimidated by other students, District employees and agents created an environment for such misconduct by failing to have its employees and agents enforce the District's anti-bullying policies and procedures as well as applicable state and federal law directly during the school day.

26.     Throughout D.G.'s time at BMS, District allowed students, including D.G., to be freely bullied, harassed and intimidated throughout the school day with little to no consequences or intervention by District employees and agents against the perpetrators of the misconduct.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

27.     Because District employees and agents failed to maintain classroom discipline during the school day, students and parents, including D.G. and Parents, were left with no option other than to complain about episodes of past bullying, harassment, and intimidation to BMS teachers and administrators which just fed into the cycle of "suffer bullying-report bullying-suffer retaliation for reporting" that D.G. first experienced shortly after starting school at BMS.

28.     District reaction to reports of bullying, intimidation and harassment followed a predictable pattern. Student would report the misconduct, District employees and/or agents would criticize the victim for not reporting the episode sooner, District would conduct an ineffectual investigation thereby alerting the perpetrators that their victims had "snitched" on them, little to no disciplinary action was taken by the District, and then the reporting victims would suffer retaliatory or additional abuse from other students for making the report.

29.     Although District's employees and agents were aware of the problems caused by BMS' "snitching" culture (District employees and agents typically referred to the problem as "tattling"), they took no effective action to eliminate the misconduct, step-up their efforts to maintain student discipline through their own actions, and/or enforce the District's own anti-bullying policies and procedures or applicable state and federal law.

30.     An example of the District's lax efforts to control bullying or combat the anti-snitch culture was District's failure to publicize and/or utilize its own hotline that would have allowed parents and students to anonymously report incidents of bullying, harassment, and intimidation to BMS administrators and officials. While all such anonymous reports could not be corroborated, schools such as BMS with extensive video recording systems could have effectively investigated many incidents of bullying and responded appropriately without contributing further to the anti-snitch environment at BMS.

31.    Although District employees and agents engage in perfunctory and self-serving "investigations" of reported incidents of bullying, harassment and intimidation, no effective discipline was administered, or in some instances no disciplinary or corrective action was even attempted, for the offending students.

32.    For example, on or about October 12, 2022, Parents complained to BMS teachers and staff that D.G. was being bullied in gym class. Eventually, BMS Principal Mazyck responded to parents and acknowledged she was aware of the bullying; nevertheless the bullying continued without any intervention by District employees or agents.

33.    On November 28, 2022 classmate "B" threatened to injure D.G. if D.G. got up from a desk again. D.G. had moved from the assigned seat to adjust a window blind in the classroom. As was usually the case, no District employee or agent took any action to address "B's" threat against D.G. or otherwise provide a safe and nurturing school environment for D.G.

34.    The November 28th incident was a breaking point for D.G. Emotionally distressed by the ongoing bullying, harassment and intimidation at school, D.G.'s nerve broke. D.G. frantically emailed Parents from school begging to be removed from BMS and be enrolled in homeschooling. D.G. explained these changes were needed because D.G. could no longer take being bullied and threatened during school by other students.

35.    Concerned about D.G.'s constant anxiety and desire to never return to BMS, Parents reported D.G.'s continued bullying, including the November 28th incident, to Principal Mazyck. Mazyck claimed this was the "first" she had heard of D.G. being bullied.

36.    Later, Principal Mazyck claimed she had met with "B" and suggested the threat was justified because D.G. adjusted the blinds without permission.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

37.     Upon information and belief, District took no disciplinary action against "B" related to the November 28, 2022 incident or any other student regarding any recent incident of bullying, harassment, intimidation, and/or retaliation against D.G.

38.     In addition to D.G.'s persistent bullying, harassment and intimidation, other parents and teachers in the District were complaining to Parents about "how completely out of control students have become" in Richland County School District 2.

39.     On December 15, 2022, Parents shared their concerns, and the concerns of other parents, about bullying, harassment and intimidation with members of the District's School Board.

40.     Responding to Parent's December 15th complaint to the Chair of the District's School Board, Dr. Monica Elkins-Scott, issued a statement on behalf of the District claiming "WE will take innovative, effective and proactive measures to improve school safety immediately." (emphasis in original)

41.     Following the School Board's December 15, 2022 pledge for action against bullying, District did nothing to address D.G.'s bullying and even failed to utilize those counter bullying tools then available to the District such as its own anonymous bullying hotline.

42.     While the District did not take any new anti-bullying measures following Parents' December 15, 2022 complaint to the School Board, BMS teachers and administrators began frequently punishing D.G. for alleged misconduct, including but not limited to:

    a.  01/18/2023 > D.G. was given an "In-School Suspension" for engaging in "horseplay" while retrieving an instrument for music class;
    b.  02/02/2023 > D.G. was referred to BMS' Intervention Assistance Team due to alleged misbehavior;
    c.  02/10/2023 > D.G. was punished in gym class for throwing a ball back "hard" at another student who had just thrown the ball into the back of D.G.'s head;
    d.  02/24/2023 > D.G. was given "lunch detention" for allegedly being disruptive in class;

e. 03/02/2023 > Music teacher Bostick suggested D.G. may have broken another student's instrument;

f. 03/02/2023 > D.G. was assigned to "silent lunch" for verbally responding to another student who was bullying D.G.;

g. 03/29/2023 > D.G.'s cell phone was confiscated at the start of afternoon announcements even though students are allowed to use their phones during the announcements. D.G. was simply texting a family member about a ride home;

h. 02 to 04/2023 > Coach Lisa McDowell repeatedly disciplined D.G. for "horseplay" during gym.

43. Eventually, the effects of the continued bullying, harassment and intimidation, along with the one-sided punishments D.G. endured caused such anxiety that D.G. expressed a desire for self-harm to Parents.

44. Dismayed and concerned by the ongoing bullying and lack of any effective response to it, Parents again reached out to the School Board on May 15, 2023 for help.

45. In response to Parent's May 15th Complaint to the School Board, Principal Mazyck emailed Parents on May 16, 2023 claiming BMS had "intervened" anytime D.G. brought an issue "to our attention" and BMS "ensured appropriate consequences for any student involved after we ensure a complete investigation."

46. Principal Mazyck went on to claim that Music Teacher Bostick confined D.G. alone in a storeroom to "decompress" and that the punishment was not as bad as it sounds because D.G.'s instrument was kept in that storeroom.

47. On the last day of school at BMS in May of 2023, D.G. recorded a fellow student threatening to kill D.G. D.G. showed the video to Parents and explained there was no point in sharing it with a teacher. Many of D.G.'s classmates already identified D.G. as a "school snitch" and that several teachers seemed irritated by any report of bullying.

48. D.G. started the 7th Grade at BMS in August of 2023.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

49.     Just after starting the 7th Grade, Parents email Principal Mazyck to remind her of last year's "challenge with bullying and harassment" but let her know they were optimistic about the involvement of Assistant Principal Cedric Jones with 7th Grade students.

50.     Because Principal Mazyck routinely discounted incidents of harassment, intimidation and bullying, Parents referenced the video of the student threatening to kill D.G. at the end of the 6th Grade that D.G. had recorded. Mazyck did not ask to view the video, merely commenting "it becomes very difficult for us to investigate after the incident" suggesting that video evidence was an insufficient basis for an investigation or disciplinary action.

51.     Parents reminded Principal Mazyck that D.G. was reluctant to report misconduct during class because BMS students harassed perceived "snitches" and several teachers respond with irritation to such reports.

52.     On August 10, 2023, D.G. emailed Vice Principal Cedric Jones per Principal Mazyck's instructions about an incident of bullying during D.G.'s 5th period science class. Mr. Jones' response did not address the bullying but merely advised D.G. to report such incidents to the teacher and/or to him sooner.

53.     During math class on August 18, 2023, the teacher admonished D.G. and another student for talking during the class. The other student responded to the admonishment by using "profanity towards [D.G.]" claiming the profanity was a response to something objectionable D.G. said to the student.

54.     After a typical investigation of the August 18th incident, Vice Principal Cedric Jones admitted he could not substantiate the claim that something D.G. said caused the other student's profane response; nevertheless, Jones warned D.G. that District policy allowed him to

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

investigate student concerns over "inappropriate comments" thereby suggesting that D.G. could be punished for speech other students claimed was offensive.

55.     D.G. and Parents were concerned about Mr. Jones comment about a District policy to punish a student based on complaints from other students in an environment where perceived "snitches" were already being bullied, harassed and intimidated.  While the comment did not seem relevant to the verbal altercation on August 18th, Parents wondered if it was a veiled threat about reporting the video threat at the end of the last school year.

56.     On August 29, 2023, Stephen Gilchrist was picking up D.G. from BMS when he witnessed a group of students shoving D.G.  When Mr. Gilchrist suggested reporting incident to Mr. Jones, D.G. became agitated and begged Parents to not report the incident because it would only add to the "snitch" taunts and harassment D.G. already received and BMS would not take any action to discipline the bullies.

57.     Concerned about D.G.'s physical safety, Parents reported the August 29th incident to Mr. Jones, but asked that he not involve D.G. due to the "snitch" harassment.

58.     Upon information and belief, neither Mr. Jones nor any other District employee or agent undertook an investigation of the August 29th incident even though it occurred in view of BMS' exterior video cameras.

59.     On or about September 18, 2023, D.G. was injured by a classmate in a student bathroom.  D.G. was treated by the school nurse then questioned by Principal Mazyck and Assistant Principal Jones who required D.G. to serve an in-school suspension due to the bathroom incident.

60.     On or about October 8, 2023, Coach Lisa McDowell alleged that D.G. was trying to "copy" answers from another student by asking for access to the other student's electronic

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

documents. In fact, the student was assisting D.G. with their lessons both in and out of the classroom.

61.    On or about March 22, 2024, student "DJ" pushed D.G. into a wall while walking in a hallway. D.G. then pushed "DJ" back. BMS concluded this was a "mutual exchange" and assigned D.G. a one-day detention.

62.    On or about April 9, 2024, Coach Lisa McDowell emailed Parents to complain that D.G. had to replace a defective Chromebook in order to be able to take a MAP test and that she found the request "totally unacceptable" of a 7th grader. She also claimed to have repeatedly instructed D.G. to "stop screaming and yelling" during gym class.

63.    On October 25, 2024, D.G. was punched in the face while playing basketball during gym class. Although at least two (2) teachers or other District employees were present in the gym, no one responded to the battery, no one addressed the incident with the perpetrator, no one checked on D.G.'s condition, and no disciplinary action was suggested or taken against the perpetrator.

64.    Upon seeing the injury to D.G.'s face and concerned with the lack of student discipline in BMS generally and in gym class specifically, Parents demanded to view the video of the October 25th incident. District allowed Parents to watch a short, edited video of the incident.

65.    The video of the October 25th incident clearly showed the punch, the proximity of District employees or agents to the altercation, and the lack of response to the punch by any District employee or agent.

66.    Despite the video evidence of misconduct on October 25th battery, BMS took no disciplinary action against the perpetrator and went so far as to suggest the punch to the head was "no big deal" because the students went back to playing basketball.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

67.     Appalled by the absolute lack of any effort by the District to provide a safe school environment for D.G. and other students for more than a year, Parents were advised their only recourse was to report the episode to law enforcement which they did.

68.     Upon information and belief, District undertook a limited punishment of the perpetrator of the October 25th incident after Parents filed a criminal complaint with BMS' school resource officer (a Richland County Sheriff's Deputy).

69.     On October 31, 2024, a student used his cell phone to reach over a bathroom partition and take a photo of D.G. using the toilet.  The student then posted the photo on his social media which was shared throughout the BMS community including a site(s) known to be used by District employees and agents.

70.     Although District employees, staff and volunteers quickly learned of the October 31st photo, who took the photo, and how the photo was distributed on social media, BMS took no disciplinary action concerning the incident.

71.     When Parents complained about the distribution of the explicit photo, the District's Title IX coordinator informed Parents that nothing could be done about the incident unless the Parents filed a Title IX complaint and participated in the District's Title IX investigation.

72.     When Parents objected to the Title IX coordinator's demand for a complaint about the October 31, 2024 photo, Title IX coordinator said nothing could be done without a Title IX Complaint due to "rules put in place by President Trump."

73.     In a letter to the parents the Title IX coordinator confirmed that District would take no disciplinary action against the student who took and distributed the October 31, 2024 bathroom photo.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

74.     As was the case with the October 25th punch in the head, Parents were forced to bring a criminal complaint against the student who took the October 31st bathroom picture because District failed to enforce is own policies and procedures, acted contrary to state and federal law, and failed to take any action to create a safe and nurturing educational environment at BMS.

75.     Faced with the utter lack of discipline at BMS and the increasing brutal bullying, harassment and intimidation D.G. was suffering at school, Parents removed D.G. from BMS and engaged relevant professionals to help D.G. recover from the injuries sustained at BMS.

## FIRST CAUSE OF ACTION
### Negligence/Gross Negligence/Recklessness

76.     Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

77.     At all times relevant to this action, District, by and through its agents, servants, personnel, volunteers, and/or employees, was acting under color or pretense of state and federal law, custom, policy, usage, and usual educational practices.

78.     District owed D.G. and Plaintiffs a clear duty to provide a safe, secure and effective school learning environment at BMS for all its students including D.G.

79.     District was negligent, grossly negligent, reckless, wanton, and outrageous due to the acts and omissions of its agents, servants, personnel, volunteers, and/or employees that proximately caused a dangerous educational environment for D.G. and other students at BMS.

80.     The District, acting by and through its agents, servants, personnel, volunteers, and/or employees, was negligent, grossly negligent, reckless, willful and/or wanton in its acts and/or omissions as set forth above, including but not limited to the District's:

    a. failure to provide a safe school environment that was free from bullying, harassment and intimidation;

    b. deliberate indifference to known incidents of misconduct, bullying, intimidation, harassment, and/or retaliation against D.G.;

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

c.  failure to protect students from physical and/or mental abuse as well as threatening behavior by other students while attending BMS;

d.  encouraging and/or facilitating student bullying, harassment, and/or intimidation against perceived "snitches" by ignoring student misconduct perpetrated in BMS classrooms that were under, or could have been under, the supervision of District employees and agents;

e.  encouraging and/or facilitating student retaliation against perceived "snitches" by ignoring student misconduct perpetrated in BMS classrooms that were under, or could have been under, the supervision of District employees and agents

f.  creating a dangerous school environment by failing to enforce District policies and procedures as well as applicable state and federal law;

g.  failure to protect D.G. from other students with known propensities to bully, intimidate, harass, and/or retaliate against other students including D.G.;

h.  encouraging and/or facilitating student misconduct toward D.G. due to District's failure to enforce its own policies and procedures as well as applicable state and federal law which created a dangerous environment for D.G. at BMS;

i.  failure to properly train, supervise, and monitor District's agents, servants, personnel, volunteers, and/or employees;

j.  allowing, ignoring, and/or condoning acts of misconduct, bullying, intimidation, harassment, and/or retaliation by students and employees;

k.  failure to monitor and enforce repeated instances of student misconduct and respond to same with reasonable student discipline and, if appropriate, corrective action, to discourage and/or prevent student bullying, intimidation, harassment, and/or retaliation of D.G.;

l.  failure to provide reasonable student discipline and, if appropriate, corrective action for acts of student bullying, intimidation, harassment, and/or retaliation by creating an environment where District policies and procedures are not enforced and student bullies are not punished for bullying, intimidation and harassment if that misconduct is reported by a student or parent;

m.  creating a dangerous school environment for D.G. and other students by failing to impose reasonable student discipline and, if appropriate, corrective action for incidents of student bullying, intimidation, harassment, and/or retaliation

n.  creating a dangerous school environment for D.G. and other students by shifting the disciplinary burden for incidents of student bullying, intimidation, harassment, and/or retaliation from teachers and administrators to law enforcement personnel such as the School Resource Officers (SROs).

o.  failure to provide reasonable and timely monitoring of student-to-student and employee-to-student interactions;

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

p.  failure to adopt and/or implement reasonable policies and procedures to identify incidents of misconduct, bullying, intimidation, harassment, and/or retaliation by students and/or teachers;

q.  failure to adopt and/or implement reasonable policies and procedures to undertake timely investigations of incidents of misconduct, bullying, intimidation, harassment, and/or retaliation;

r.  failure to adopt and/or implement reasonable policies and procedures to take appropriate disciplinary action to discourage or prevent repeated instances of misconduct, bullying, intimidation, harassment, and/or retaliation;

s.  failure to adopt and/or implement policies and procedures to reasonably ensure District's compliance with applicable policy, existing order, and state and federal law;

t.  failure to properly instruct students on District's policies and procedures regarding bullying, intimidation, harassment, and/or retaliation;

u.  failure to monitor and supervise student compliance with the District's own policies and standards;

v.  failure to monitor and supervise District's agents, servants, personnel, volunteers, and/or employees to ensure compliance with the District's own policies and standards;

w.  breached its fiduciary duty to students, including D.G.; and

x.  failure to exercise even slight care to protect D.G. from physical and emotional injury.

81.     District created a dangerous environment for all students, including D.G., by failing to protect students from acts of bullying, intimidation, harassment and physical battery during the school day while also prohibiting students, including D.G., from contacting Parents or family during most of the school day and/or leaving school premises which deprived D.G. of a reasonable opportunity to defend against bullying, intimidation, harassment and physical battery while attending BMS.

82.     The aforementioned acts and omissions were violations of state and federal law, educational customs and practices and other duties gratuitously assumed by the District which were the direct and proximate cause of injuries and damage to D.G.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

83.     As a direct and proximate result of the District's negligence, gross negligence, carelessness and/or recklessness, D.G. suffered and continues to suffer severe and permanent emotional distress, humiliation, anxiety, loss of pleasures and enjoyment of life, physical injuries, and lost opportunity to a constitutionally allotted free public education which required, and will continue to require in the future, medical, psychological and/or psychiatric medical care and treatment as well as remedial education expenses.

84.     Plaintiffs are informed and believe they are entitled to actual, consequential and punitive damages as allowed by applicable law.

## SECOND CAUSE OF ACTION
**Negligent Supervision, Negligent Training, Negligent Hiring and/or Retention.**

85.     Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

86.     At all times relevant to this action, District, by and through its agents, servants, personnel, volunteers, and/or employees, was acting under color or pretense of state and federal law, custom, policy, usage, and usual educational practices.

87.     District owed D.G. and Plaintiffs a clear duty to provide a safe, secure and effective school learning environment at BMS for all its students including D.G.

88.     District was negligent, grossly negligent, reckless, wanton, and outrageous due to the acts and omissions of its agents, servants, personnel, volunteers, and/or employees that proximately caused a dangerous educational environment for D.G. and other students at BMS.

89.     The District, acting by and through its agents, servants, personnel, volunteers, and/or employees, was negligent, grossly negligent, reckless, willful and/or wanton in its acts and/or omissions as set forth above, including but not limited to the District's:

a.  Intentional failure to exercise reasonable or slight care to protect D.G. from harm at the hands of the District's agents, servants, personnel, volunteers, and/or employees;

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

b.  Intentional failure to exercise reasonable or slight care to protect D.G. from harm at the hands of other students known to the District's agents, servants, personnel, volunteers, and/or employees to have a propensity to bully, harass and intimidate others students generally and D.G. specifically;

c.  Intentional failure to exercise reasonable or slight care to provide supervision, instruction, and/or disciplinary enforcement of District's rules and legal obligations at BMS thereby creating an unsafe school environment;

d.  Failure to exercise reasonable or slight care to properly train and/or supervise its agents, servants, personnel, volunteers, and/or employees in the District's policies and procedures intended to address bullying, harassment and intimidation;

e.  Failure to exercise reasonable or slight care in adopting and/or implementing effective policies that allowed students such as D.G. to report instances of harassment, intimidation, bullying, and retaliation without being identified and further harassed, intimidated, and bullied as "snitch," by their classmates;

f.  Allowing District agents, servants, personnel, volunteers, and/or employees to refuse to take reasonable and customary disciplinary actions against students who bullied, intimidated, harassed and battered D.G.;

g.  Allowing District agents, servants, personnel, volunteers, and/or employees to shift District's duty to take reasonable and customary disciplinary actions against students who bullied, intimidated, harassed and battered D.G. to law enforcement thereby requiring Parents to act on D.G.'s behalf; and

h.  Failure to exercise reasonable or slight care to draft and/or implement proper policy and procedures to provide for a safe school environment.

90.    District created a dangerous environment for all students, including D.G., by failing to protect D.G. from acts of bullying, intimidation, harassment and physical battery during the school day while also prohibiting D.G. from contacting Parents or family during most of the school day and/or leaving school premises which deprived D.G. of a reasonable opportunity to defend against bullying, intimidation, harassment and physical battery while attending BMS.

91.    District was negligent, grossly negligent, reckless, wanton, and outrageous due to the acts and omissions of its agents, servants, personnel, volunteers, and/or employees that proximately caused a dangerous educational environment for D.G. and other students at BMS.

92.    The unsafe educational environment at BMS was the proximate result of the District's failure to provide supervision, instruction, and reasonable disciplinary enforcement of

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

the District's rules and legal obligations to BMS students thereby fostering an unsafe school environment where students, especially students perceived to be "snitches" by other students, were subjected to harassment, intimidation, bullying and retaliation due to the District's failure to impose effective disciplinary measures against these types of student misconduct.

93.    As a direct and proximate result of the District's negligence, gross negligence, carelessness and/or recklessness, D.G. suffered and continues to suffer severe and permanent emotional distress, humiliation, anxiety, loss of pleasures and enjoyment of life, physical injuries, and lost opportunity to a constitutionally allotted free public education which required, and will continue to require in the future, medical, psychological and/or psychiatric medical care and treatment as well as remedial education expenses.

94.    Plaintiffs are informed and believe they are entitled to actual, consequential and punitive damages as allowed by applicable law.

### THIRD CAUSE OF ACTION
**Violation of 42 U.S.C. 1983, Due Process and 14th Amendment**

95.    Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

96.    District created a dangerous environment at BMS that deprived children, including D.G., of their constitutional right to a free, safe and adequate education by adopting and perpetuating a pattern, practice, and policy under color of law that allowed, ignored, and/or condoned acts of misconduct, bullying, intimidation, harassment, and/or retaliation against D.G.

97.    District created a dangerous school environment by adopting and perpetuating a pattern, practice, and policy under color of state law that blames and/or punishes the victims of bullying, intimidation, harassment, and/or retaliation for the very misconduct that is perpetrated against students such as D.G. at BMS.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

98.    District further created a dangerous school environment by adopting and perpetuating a pattern, practice, and policy under color of state law that provides little or no student disciplinary action in response to incidents of bullying, intimidation, harassment, and/or retaliation at BMS.

99.    District further created a dangerous school environment by adopting and perpetuating a pattern, practice, and policy under color of state law that actively prohibits students who suffer incidents of bullying, intimidation, harassment, and/or retaliation at BMS from contacting parents and family members to help them respond to these incidents as they occur during the school day.

100.    District created an educational environment that deprived children, including D.G., of their constitutional right to a free, safe and adequate education.

101.    District further created an educational environment that deprived children, including D.G., of their constitutional right to a free, safe and adequate education by adopting and perpetuating a pattern, practice, and policy under color of state law that intentionally excuses incidents of bullying, intimidation, harassment, and/or retaliation.

102.    District further created an educational environment that deprived children, including D.G., of their constitutional right to a free, safe and adequate education by adopting and perpetuating a pattern, practice, and policy under color of state law that intentionally shifts the burden for imposing student discipline for incidents of bullying, intimidation, harassment, and/or retaliation from the District to students such as D.G. and/or the students' parents, including Parents.

103.    District had a duty to adopt and enforce policies, rules, and procedures that prohibited and/or reasonably punished the harassment, intimidation and bullying of students, including D.G., by other students and District employees and agents while on school premises.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

104.    District further had a duty to not encourage, condone or permit bullying, harassment, and intimidation nor create an environment where student-on-student bullying, harassment, and intimidation could occur without disciplinary consequences.

105.    District breached the aforementioned duties when it created a dangerous environment for all students, including D.G., by failing to protect students from acts of bullying, intimidation, harassment and physical battery during the school day while also prohibiting those same students and D.G. from contacting Parents or family during most of the school day and/or leaving school premises which deprived students including D.G. of a reasonable opportunity to defend against bullying, intimidation, harassment, retaliation, humiliation, and physical battery while attending BMS.

106.    Upon information and belief, District received numerous complaints of harassment, intimidation and bullying at schools throughout the District and at BMS in particular.

107.    District had actual and constructive notice of repeated instances of harassment, intimidation, bullying and retaliation of D.G., yet took no meaningful remedial or disciplinary action against the perpetrators, choosing to either not discipline perpetrators and/or blaming the perpetrators' conduct on D.G. which allowed the harassment, intimidation, and bullying to continue.

108.    By selectively punishing D.G. for minor or nonexistent misconduct, but allowing other students to bully, intimidate and humiliate D.G. without any disciplinary consequences from the District for the misconduct, District created a dangerous environment for D.G. and other students who could be bullied without being able to take meaningful steps to protect themselves.

109.    The harm to D.G. and other students by the District's failure to impose consistent and effective disciplinary measures for students engaged in bullying, harassment, and intimidation

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

was foreseeable and the direct consequence of the District's reckless and grossly negligence acts and omissions that are set forth above.

110.    The absence of any disciplinary response from the District to incidents such as the October 2023 battery and unauthorized dissemination of the humiliating bathroom photo involving D.G. was deliberate and intentional misconduct that shocks the conscience and is intolerable in any public school.

111.    The injuries suffered by D.G. as the proximate and foreseeable consequence of the District's deliberate inaction and refusal to discipline perpetrators of bullying, intimidation, harassment, retaliation, humiliation, and physical battery.

112.    District failure to provide an effective disciplinary response to the bullying, intimidation, harassment, retaliation, humiliation, and physical battery that D.G. suffered at the hands of bullies and/or District employees throughout the 6th and 7th grades, of which the District had repeated actual notice of.

113.    As a direct and natural consequence of District's actions, inactions, and deliberate indifference to the violations of D.G.'s constitutional rights, D.G. suffered, and continues to suffer physical injuries, emotional distress, psychological trauma, and the denial of the education and educational opportunities D.G. is entitled to.

### FOURTH CAUSE OF ACTION
### Violation of Title IX and Education Amendments of 1972

114.    Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

115.    Title IX of the Education Amendments of 1972 applies to every school that receives federal funds.

116.    Upon information and belief, District receives federal funding for the operation of its many schools including BMS.

117. Title IX and other applicable law provides for the adoption and implementation of a grievance procedure that will ensure the "prompt and equitable resolution" of claims regarding certain types of student-on-student misconduct in furtherance of the goal of eliminating any form of discrimination based on sex in an educational environment.

118. Title IX and other applicable law requires educational institutions such as the District to promptly act to eliminate a hostile school environment that produces incidents of sexual harassment and sexual assault if the institution knowns or should have known about the occurrence of sexual harassment or sexual assault.

119. Title IX and other applicable law does not require educational institutions to suspend or abandon the institution's policies and procedures regarding bullying, intimidation, harassment, retaliation, humiliation, and physical battery upon a report of, or the institution's knowledge of, for misconduct other than sexual harassment or assault.

120. District employees and agents had actual notice of the incident on October 31, 2024 wherein a student used his cell phone to reach over a bathroom partition and take a photo of D.G. using the toilet and the subsequent publication of that photo on social media.

121. District characterized the photo as an act of sexual harassment and/or assault that was subject to the rules and requirements of Title IX and other applicable law.

122. Citing the legal requirements of Title IX, District refused to punish the student who took the photo as a matter of school discipline even though the photo clearly violated District's own policies and code of student conduct.

123. Further citing the legal requirements of Title IX, District refused to "investigate" the photo as a Title IX violation without a "Title IX complaint" from Parents.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

124.    Parents informed District that the October 31st photo incident was yet another incident of the bullying, intimidation, harassment and retaliation D.G. had suffered at BMS and did not warrant the formal Title IX investigation proposed by the District because the perpetrator had already admitted to taking and posting the photo.

125.    Nevertheless, District refused to take any disciplinary action without a Title IX complaint from the Parents and closed the matter when Parents refused to lodge the Title IX complaint demanded by the District.

126.    Assuming *arguendo* that the October 31st incident was the type of misconduct prohibited by Title IX, District violated the requirements of Title IX and other applicable law by failing to proceed as required by Title IX after learning of the incident and the perpetrator, to wit:

   a.    failing to conduct its own investigation of the incident;
   b.    failing to report the perceived act of sexual misconduct to the required authorities;
   c.    failing to take any action to ensure D.G.'s safety at BMS after the occurrence of the other actions outlined above, including but not limited to, D.G's injury in another bathroom and during gym class just before the photo incident; and
   d.    failing to involve law enforcement in an incident District believed was subject to criminal law.

127.    District also violated Title IX and other appliable law by intentionally using misrepresentations about Title IX requirements imposed by an earlier Department of Education and Presidential Administration to justify District's failure to investigate and/or impose any disciplinary penalty for the photographer's violation of District policy and code of student conduct.

128.    As a direct and proximate result of the aforementioned actions and omissions by the District, D.G. has been injured and damaged by the deprivation of the rights, privileges, and immunities afforded to students such as D.G. as citizens of the State of South Carolina and the United States; and has incurred, and will continue to incur, financial obligations for medical, physical, and psychological care as well as remedial education expenses and the loss of the

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

enjoyments of life thereby entitling D.G. to an award of actual, consequential and punitive damages, as well as reasonable attorney fees, as allowed by applicable law.

### FIFTH CAUSE OF ACTION
**Premise Liability**

129.    Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

130.    District owed a duty to reasonably protect D.G. from known dangers and harm while attending BMS.

131.    District knew, or through the exercise of reasonable diligence, could have known that some of D.G.'s classmates had a propensity to bully, harass, humiliate, intimidate, and/or retaliate against perceived "snitches."

132.    District knew, or through the exercise of reasonable diligence, could have known that some of D.G.'s classmates posed a risk of harm to D.G. and other students.

133.    District should have expected that D.G. and other students had no reasonable access to assistance from parents and family to assist with threats from other students while attending BMS and that D.G. was therefore dependent on District employees and agents to protect D.G. from bullying, harassment, and intimidation by other students during school hours.

134.    District failed to exercise reasonable care for D.G. while at school thereby breaching the duties District owed to D.G.

135.    As a direct and proximate result of the Defendants negligent, grossly negligent, intentional and reckless acts and omissions, D.G. has incurred and will continue to incur financial obligations for medical, physical, and psychological care as well as remedial education expenses and the loss of the enjoyments of life thereby entitling D.G. to an award of actual, consequential and punitive damages, as well as reasonable attorney fees, as allowed by applicable law.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

### SIXTH CAUSE OF ACTION
**Outrage**

136.    Plaintiffs hereby incorporate all paragraphs above as if fully restated herein.

137.    District was negligent, grossly negligent, reckless, willful and wanton as set forth above and further described herein and that said misconduct caused D.G. to suffer severe emotional distress and related injuries.

138.    District knew, or should have known, that the negligent, grossly negligent, reckless, willful and wanton misconduct of District employees and agents, which were reported several times by Parents to both the District and the District's School Board, would inflict severe emotional distress on students such as D.G. who were both subject of bullying, intimidation and harassment during school and without any effective defense to same.

139.    District's negligence, gross negligence, recklessness, willfulness, and wantonness was so extreme and outrageous that it exceeded all boundaries of decency and must be regarded as utterly intolerable in a civilized community.

140.    As the direct and proximate result of the District's aforementioned negligent, gross negligent, intentional, and reckless acts and/or omissions, D.G. suffered emotional distress that no reasonable child should be expected to endure.

141.    As the direct and proximate result of the District's negligent, intentional and/or reckless acts and/or omissions, D.G. suffered injuries and damages that have caused, and will continue to cause, Parents to incur the costs of medical, physical, and psychological care and the loss of the enjoyments of life thereby entitling D.G. to an award of actual, consequential and punitive damages, as well as reasonable attorney fees, as allowed by applicable law.

ELECTRONICALLY FILED - 2025 Apr 30 4:27 PM - RICHLAND - COMMON PLEAS - CASE#2025CP4003039

142.    D.G.'s emotional distress was of such nature as to entitle D.G. and Parents to actual damages in an amount that is adequate to compensate them for D.G.'s severe emotional distress, pain and suffering, injuries and damages.

**WHEREFORE,** Plaintiffs allege and maintain that each and every incident of negligence, gross negligence, recklessness, and outrageous acts or omissions set forth about was the proximate cause of a unique injury and damage to D.G. which contributed to the overall injuries suffered by D.G. while attending BMS and thereby entitle Plaintiffs to pray for a judgment against the District for the following:

a.    Actual damages for all causes of action;

b.    Consequential damages for all causes of action;

c.    Punitive damages for all but the SECOND CAUSE OF ACTION;

d.    Costs and expenses of this action;

e.    Reasonable attorney fees for all but the SECOND CAUSE OF ACTION; and

f.    Such other relief as the Court may deem just and proper.

**GRIER, COX & CRANSHAW, LLC**

**s/ Robert B. Phillips**
By:    Robert B. (Sam) Phillips
       S.C. Bar No. 16954
       2001 Assembly Street, Suite 204 (29201)
       P.O. Box 2823 (29202)
       Columbia, South Carolina
       Telephone:  803.731.0030
       Cellphone:  803.606.5694
       Facsimile:  803.526.7642
       Email:  sphillips@griercoxandcranshaw.com

Columbia, SC
30 April 2025